Brown, J.
 

 Though Gilbertson’s sight of the road was unobstructed when he pulled out to pass Olson he testified that he did not see the Bauman car until it was some 300 feet from him and was then about one half its width on the west shoulder of the highway. Gilbertson testified that when he first saw the Bauman car he had gone by Olson and had returned to his own proper lane, the east lane of the highway, and had been there for three or four seconds before the collision. Gilbertson was then going about 55 miles per hour. He
 
 *631
 
 did not know how far back of him Olson was when Gilbert-son returned to his proper lane. The driver of an automobile which was following the Bauman car and observed it at all times material, testified that the Bauman car was in its own proper lane, the west lane, until the Gilbertson truck was 200 feet away. Then Mrs. Bauman turned onto the west shoulder and stayed there for about 40 feet. Then her car made a quick turn to the left, came diagonally across the cement highway and struck the Gilbertson truck on the truck’s left side. The shoulder was covered with loose gravel. There is no proof of the exact spot of the highway where the first contact was made.
 

 The testimony permits a jury to find that Mrs. Bauman approached the Gilbertson and Olson automobiles while she was in the west or southbound lane; then she saw Gilbertson come out from behind Olson’s car and invade the west lane. Her speed was approximately 50 miles per hour, which was the speed of the Olson car which Gilbertson was passing. The combined opposing car speeds exceeded 100 miles per hour. Confronted by a situation where both highway lanes were occupied by the northbound automobiles, she took to the west shoulder and struck the loose gravel there. That deprived her of control of her automobile, which then angled sharply across the road to strike Gilbertson’s truck.
 

 Mrs. Bauman’s car bounced back somewhat from the collision. She slumped over the wheel, her automobile was in gear and came forward again under its own power for a short distance.
 

 Gilbertson’s truck by then was occupying the east lane and Olson put on his brakes and turned into the west lane. He had brought his car almost to a standstill when it made contact with the Bauman automobile. That contact was very slight. It did not awaken a passenger in the back seat of the Olson automobile, nor were any of the passengers in that car thrown about.
 

 
 *632
 
 In charging the jury, the court gave a standard instruction on the emergency rule which absolves from negligence the driver confronted by an emergency to which his conduct has not contributed. The jury found Mrs. Bauman not negligent in any of the respects in which they were asked. The facts surrounding the collision would support a conclusion by the jury that Mrs. Bauman was confronted by an emergency to which she did not contribute and under the instructions of the court the jury could, as they did, properly find that Mrs. Bauman was not guilty of any negligence.
 

 It is not important whether Gilbertson did or did not get completely out of the west lane and into the east lane before the Bauman car hit him. Mrs. Bauman’s automobile was out of control and she would have struck the Gilbertson truck in whichever lane it could be proved the collision occurred. Having lost control through no fault of hers, there was no negligence on her part, regardless of where the collision occurred.
 

 The evidence also sustains the verdict that Olson was not guilty of any causal negligence. He, too, was confronted by an emergency not due in any respect to his own negligence. The evidence sustains the verdict that Gilbertson’s causal negligence was 100 per cent.
 

 Gilbertson requested a question in the verdict whether Olson was negligent in management and control and in lookout “at and immediately prior to the collision.” The court asked the question somewhat differently and framed the question thus:
 

 “Just before the collisions was the defendant Olson negligent with respect to:
 

 “(a) Lookout just before the first collision?
 

 “Answer: No.
 

 “(b) Management and control just before the second collision?
 

 “Answer: No.”
 

 
 *633
 
 Gilbertson accepted that form of verdict without objection but now says that the inquiry should have been made about the two collisions. His request referred to “the” collision. It was at least ambiguous and was evidently understood by the court to refer in management and control to the collision in which the Olson car participated, the second collision. The court might well consider that the instruction given complied with Gilbertson’s request, particularly when Gilbert-son made no objection to that interpretation. Now he says the question was error in not including the first collision. Gilbertson has no standing now to make the claim but even if he could make it we can find in the record no evidence which would support a finding of causal negligence against Olson at any time. Gilbertson did not testify that Olson’s conduct affected Gilbertson’s lookout or his management and control or Gilbertson’s position on the highway. He testified that he did not know where Olson was after he had passed Olson. The entire evidence concerning the force of the collision between Olson’s car and Bauman’s was too slight to be a factor in Bauman’s damages.
 

 Gilbertson submits that the verdict is inconsistent because Gilbertson was found to be negligent in lookout and Olson was found not to be. His counsel says that Olson had as much opportunity, or even more, to see Bauman as Gilbert-son had. That could only be true at the time when Olson was ahead of Gilbertson in the east lane. When Gilbertson pulled out far enough to determine that he had a clear road ahead of him and at all times thereafter, which are the material times, Gilbertson had at least equal opportunity to see everything ahead of him in the roadway. And when Gilbert-son cut back toward the east lane Gilbertson’s opportunity for lookout ahead was much better than Olson’s, for during the time when Gilbertson was passing from the west to the east lane his truck would necessarily be obstructing Olson’s view of the road ahead of him.
 

 
 *634
 
 Gilbertson contends that the award of $16,000 is excessive for the injuries which Bauman sustained. They include injury to both knees and his ribs, all of which were broken on one side. These will cause permanent pain and will impede him in his work as an automobile mechanic. He received a fractured skull, surgery was required in nailing together the parts of one of his broken legs with attendant pain and suffering, and hospitalization for eighteen days. He had to use crutches for two and one-half months and now has a permanent limp. Bauman’s life expectancy was 16.40 years at the time of the trial. The court and jury saw the plaintiff and heard the testimony concerning his injuries. The jury made the award and the trial court approved it. We find no reason to disturb it. The judgment should be affirmed.
 

 By the Court.
 
 — Judgment affirmed.